QUIÑONES, PLAINTIFF AND APPELLANT, *v.* ANA MARÍA SUGAR COMPANY, INC., DEFENDANT AND APPELLEE.

APPEAL from the District Court of Mayagüez in an Action for Damages.

No. 1388.—Decided December 19, 1916.

CONTRACT—SALE OF MERCHANDISE—DELIVERY OF THING SOLD—DEPOSIT OF PURCHASE PRICE.—Although section 1369 of the Civil Code provides that the vendor is not bound to deliver the thing sold if the vendee has not paid the price, nevertheless when it is tacitly agreed in a contract for the purchase and sale of sugar that, following the local custom, the price would be paid upon delivery of the sugar which was to be transported by the vendor at its own expense to the storehouse of the vendee, it cannot be held that the vendee should have delivered or deposited the price of the sugar in order to place himself in a position to enforce the contract.

ID.—ID.—ID.—INDEMNITY—PROFIT.—When the vendor fails to deliver the merchandise as stipulated in the contract, although it had not been paid for, the vendee has the right to be placed in the same position in which he would have been if the merchandise had been delivered—that is, according to section 1073 of the Civil Code, to be indemnified for the profit which he may have failed to realize, or, in the circumstances of this case, for the difference between the contract price and the market price on the date agreed upon for the delivery.

The facts are stated in the opinion.

*Messrs. José Sabater, Jorge V. Domínguez* and *Francisco Soto Gras* for the appellant.

*Mr. Leopoldo Feliú* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff-appellant, hereinafter referred to as plaintiff, brought suit in the District Court of Mayagüez for damages for breach of contract, alleging, among other things—

"That on August 4, 1914, and in the city of Mayagüez, plaintiff bought from defendant 740 sacks of centrifugal sugar, second class, at the price of three dollars and twenty-two and a half cents per hundred weight ($3.22½), according to the custom of this market, cash value at the moment of delivery.

"That at the request of the defendant itself, and for the exclusive convenience of the latter, plaintiff and defendant agreed that the sugar sold should be delivered to the plaintiff in lots, or partial cargos, by the end of the week subsequent to the date of the contract, to wit, the 15th of August, 1914.

"That the defendant, entirely departing from the stipulations of the contract of purchase of the sugar as made, required of the plaintiff, by letter received by the latter on August 5, 1914, that he should make a previous deposit of the total amount, as shown by the invoice sent, for the sugar sold, amounting to six thousand and seventy-nine dollars ($6,079).

"That plaintiff notified the defendant corporation by letter sent on the same day, August 5, 1914, that he was willing to accept the delivery of the article in one single day, and pay the total amount of the price agreed upon at the moment of said delivery.

"That on August 6, 1914, the defendant corporation informed the plaintiff that the contract of sale of the sugar referred to in the foregoing paragraphs had been canceled.

"That the defendant corporation has not made the delivery of the sugar sold to the plaintiff, either in part or in whole, and refuses to deliver the same as provided in said contract.

"That plaintiff has always been willing to receive the sugar so sold and pay for the same the price agreed, upon delivery of the same, and has complied with all the stipulations of the contract.

"That on August 10, 1914, plaintiff legally offered, and in good faith, to make a deposit of the total sum of the invoice already presented and received, for the sugar sold amounting to $6,079, instructing to that effect the Royal Bank of Canada in this city of Mayagüez, and that in spite of this the defendant always refuses to make the delivery of the sugar sold.

"That due solely to the failure of defendant in delivering the

sugar sold to the plaintiff the latter has suffered damages in the amount of $6,173.24, that being the amount of the difference in price of the sugar due to the rise that occurred in the week between the 10th and 15th of August, 1914.''

Defendant-appellant, hereinafter designated as defendant, after a general denial set up as new matter—

''That on or about August 4, 1914, in the city of Mayagüez, Porto Rico, plaintiff and defendant entered into or had certain negotiations as to a sale by the latter to the former of 748 sacks of sugar, which was to be carried out on the following terms: Plaintiff was to make a previous deposit on that day in the Royal Bank of Canada at Mayagüez, P. R., and in favor of the defendant, of the amount of the purchase price of said sugar, to wit, the sum of $6,079, and once the deposit was made the defendant was to deliver the said sugar to the plaintiff in partial lots of 160 sacks, the first by railroad, upon receipt of the order of the bank to that effect, and the remainder by cartloads during the week following the aforesaid date.

''That the stipulation as to the previous deposit of the value for said sugar in the said bank had to be and was a condition previous and precedent to the obligation of making the delivery of the sugar by the defendant to the plaintiff, which was imposed and accepted by the defendant, inasmuch as the said sugar was subject to a contract of loan of the same with said Royal Bank of Canada, in Mayagüez, according to which contract the defendant could not dispose in any manner of said sugar without first making a deposit of the value thereof and the proper authorization by said bank, all of which was known to the plaintiff at the time of the said negotiations.

''That plaintiff refused to comply with and accept the said pre-requisite condition of the prior deposit of the amount of said sugar, and then proposed to the defendant, about the 5th of August, 1914, that the delivery of the sugar which is the object of said negotiations, and to which this complaint refers, should be made by defendant in one single day, and he should pay the value of same once the delivery of each lot was made, whose offer or proposition was refused by the defendant; and defendant now alleges that plaintiff did not make any payment nor offer to pay, or tender on said dates the said sum of money which was the value of the sugar sold involved in said transactions, either in part or in whole, or in any manner, and, based upon these considerations, the defendant alleges that the said negotiations never became a contract.''

Among other special defenses defendant also pleaded—

"That even if the negotiations had between plaintiff and defendant on said August 4, 1914, constituted a consummated contract binding upon both parties, the said contract was terminated and rescinded by the plaintiff himself in refusing to make a deposit of the amount of the purchase price of the sugar above mentioned, in the manner stated in this answer, and in making his proposition for delivery of the sugar in a manner and upon a date different from that specified and agreed upon in the alleged contract on which the plaintiff bases this suit."

The district court, on May 29, 1915, rendered judgment in favor of defendant to the effect that plaintiff take nothing by reason of his suit, and dismissed the complaint.

The trial judge found the following facts, among others, to have been established by the evidence adduced:

"That on or about August 4, 1914, plaintiff and defendant entered into a contract by telephone, by virtue of which the latter sold to the former 748 sacks of centrifugal sugar, second class, each sack weighing 252 lbs., at the price of $3.22½ per hundredweight, the said sugar being immediately placed at the disposal of the plaintiff at the storehouse of the factory situated in the ward of Sabanetas, of the municipality of Mayagüez, to be delivered by the defendant to the plaintiff in the following manner: 160 sacks by railroad as soon as defendant received the order for delivery from the Royal Bank of Canada, Mayagüez branch, and the remainder during the week following the date of the execution of this contract, and in carloads; it being agreed likewise by both parties, that the value of said sugar, that is, the sum of six thousand and seventy-nine dollars ($6,079), should be previously deposited by plaintiff in said bank and at the disposal of the defendant, so that the latter could make the delivery of the sugar so sold.

"That defendant on the said date sent to plaintiff the invoice regarding this negotiation, which document was received by the latter on the next day.

"That the said sugar upon the execution of the contract was pledged by the defendant to the aforesaid bank by virtue of a private document signed before a notary under date prior to the execution of said contract of sale, and that defendant could not dispose of said article without previously paying its value or amount to the bank.

"That plaintiff, upon the day after the execution of the contract, that is, on August 5, 1914, and without any reason therefor, by letter addressed to the defendant informed it of his unwillingness to accept the condition as to the satisfaction of the price of said sugar in the manner agreed upon in said contract.

"That in the same letter plaintiff proposed to the defendant that said sugar should be delivered to him, if it so desired, in one single day, without saying or proposing anything as to the manner in which he would pay its value.

"That defendant refused to accept the new condition proposed by the plaintiff, as stated in the foregoing paragraph.

"That defendant, on August 6, 1914, informed the plaintiff by letter sent to him on said date, that the above contract was terminated and rescinded, which was reaffirmed by letter of the 7th of the same month, the defendant having taken this resolution inasmuch as plaintiff did not comply with the condition stipulated with regard to the payment.

"That plaintiff made no offer to defendant as to the satisfaction of the value of said sugar as agreed upon in said contract, nor did he offer to make a deposit, nor did he deposit the said value for the sugar while the aforesaid contract was continued in force by the defendant.

"That on August 10 of the said year 1914, and after plaintiff had notified the defendant of his repudiation of the manner of making the payment and made a different proposition as to the manner of delivery of the article contracted for, it was that the said plaintiff attempted to deposit in the Royal Bank of Canada, Mayagüez branch, the price of said sugar in the sum agreed upon and by means of a check."

After a careful examination of all the evidence we find ourselves wholly unable to agree with the trial court in its findings as to the nature of the original agreement, or to avoid the conclusion that plaintiff clearly established the substantial allegations of his complaint above quoted.

A full statement of all the circumstances and the consideration by which we are constrained to hold that the district court committed such manifest error in this regard as to require a reversal of its judgment, would involve an analysis in detail of all the testimony, would extend this opin-

ion to inordinate length, and would serve no useful purpose.

It will suffice to say that we are thoroughly convinced by the whole record that in the conversation by telephone on the 4th of August, which constituted the true contract between the parties, nothing whatever was said about a deposit of money as a condition precedent to the delivery of the sugar. The conduct of plaintiff from the beginning to the end of the controversy is entirely consistent with his version of that conversation, is inexplicable upon any other theory; and is wholly inconsistent and irreconcilable with the version of defendant and the theory of the trial court. Without discussing the conduct of the representative of defendant or his motives, we may say that there would seem to be no conceivable motive on the part of plaintiff for the alleged repudiation of his contract or for his refusal to make the deposit, if in fact he had agreed to do so. He had been anxious to buy the sugar. He had tried to close the deal on the day before and had almost succeeded; but defendant was wary, asked for an hour's time within which to confirm the oral agreement and took twenty-four hours to consider the matter without either confirming the agreement or withdrawing its tentative acceptance of the proposition as made. On the 4th plaintiff, accepting an offer made in the course of a telephone conversation, finally agreed to pay $3.22½ for the same sugar he had all but obtained at $3.15 on the 3d; details as to the delivery were arranged and the contract thereupon became complete. The market was rising on the 4th and continued to rise. Defendant knew when its letter of confirmation was written that conditions indicated a further advance in price. Every hour that passed made the contract more valuable to the purchaser and more disadvantageous to the vendor. Plaintiff had many times the sum involved lying idle on deposit in the same bank in which defendant claims he had agreed to deposit the amount of the purchase price. There is no rational explanation of plaintiff's refusal to make such deposit other than

the one given by him, to wit, honest indignation at what he regarded as a gratuitous reflection on his financial responsibility and standing implied in the attempted injection into the situation of the stipulation for a deposit as a condition precedent to delivery contained in defendant's letter confirming the conversation by telephone. It may be that the representative of defendant intended to include the stipulation in the original agreement and believed that he had done so. It may be that he had no desire to avoid or repudiate his contract and that he acted in the utmost good faith throughout. But however this may be, we have no doubt whatever that the first notice plaintiff ever had of the proposed requirement as to deposit of the purchase price was contained in defendant's letter confirming the agreement by telephone and after the contract of purchase and sale had been consummated.

Much has been said as to whether the appellant should have delivered or deposited the price of the sugar to put himself in a position to make a claim. It is true that section 1369 of the Civil Code, relied upon by the appellee, provides that "the vendor shall not be bound to deliver the thing sold, if the vendee should not have paid the price"; but it is also true that said section further says "or if a period (*plazo*) for the payment has not been fixed in the contract"; and it appears from the evidence that in the contract made between plaintiff and defendant it was tacitly stipulated that the price should be paid, following the custom in the market, upon delivery of the article, which was to be transported by defendant at its own expense from the factory to the plaintiff's storehouse in the city of Mayagüez during the week next ensuing after execution of the contract. Such delivery was never made by the defendant. See also section 1222 of the said code, which provides that "the contracting parties may make the agreement and establish the clauses and conditions which they may deem advisable,

provided they are not in contravention of law, morals, or public order.''

Defendant also argues at some length in its brief that what plaintiff really seeks to recover is anticipated profits, too uncertain, remote and speculative in character to be considered as damages herein, in the absence of any proof of actual contract for the resale of the sugar of which defendant had notice at the time of the sale.

But plaintiff claims no special damages by reason of frustrated agreements for resale or other exceptional circumstances unknown to defendant. Plaintiff had been doing business in Mayagüez for many years, speculating in sugar and coffee, and had previously bought sugar of defendant in the same way and upon the same terms and conditions as in the instant case, paying for it upon delivery after weighing and inspecting the same. The sugar involved herein was a very small portion of what defendant itself was holding for higher prices in its factory and warehouses, and there is evidence tending to show that at least one of the motives for the sale upon the part of the vendor was the want of storage capacity and a desire to relieve the congested condition of its factory warehouse, a part of the sugar so sold, in fact, being already loaded upon a freight car for want of suitable space elsewhere. The deal itself was based upon current quotations from the New York market, in so far as known at the time, and the question of a fluctuating market was plainly in the minds of both parties. The testimony, as a whole, leaves no room for doubt that prospective profit or loss, according to the rise or fall of prices in the New York market, was clearly within the contemplation of the parties.

''The grounds upon which is founded the general rule of excluding profits in estimating damages are, (1) that in the greater number of cases such profits are too dependent upon numerous and changing contingencies to constitute a definite and trustworthy measure of damages; (2) because such loss of profits is ordinarily remote

and not the direct and immediate result of a non-fulfilment of the contract; (3) the engagement to pay such loss of profits, in cases of default in performance, does not form a part of the contract, nor can it be said, from its nature and terms, that it was within the contemplation of the parties. Cases arise, however, in which loss of profits is said to be clearly within the contemplation of the parties, although not provided for by the terms of the contract, and where such profits are not open to the objection of uncertainty or remoteness. An instance of the latter kind is where the contract is entered into for the purpose, in part at least, of enabling the party to fulfill a collateral agreement from which profits would arise, of the existence of which he informed the other party prior to the making of the contract. In such cases the loss of profits from the collateral agreement is clearly within the contemplation of the parties, and is not remote or speculative.

''If a vendor fails to deliver property pursuant to his contract, the vendee, having paid for it, is deprived of such benefit as such sale completed would have conferred, which is a loss equal to the value of the property at the time it should have been delivered, with interest from that time. This value can generally be proved with certainty. If the property has not been paid for, the compensation is still adjusted with reference to the value, and is the difference between the contract price and the value. Thus, the vendee is entitled to recover according to the advantage he would have derived from performance of the contract, namely, the profit he could have made by the bargain. He is entitled to such sum as would enable him to obtain the property if it is obtainable. On the other hand, where a vendee breaks his contract, the property is left on the vendor's hands; his loss is equal to the difference between the contract price and any less sum the property is worth when the vendee was bound to take and pay for it. The loss he suffers is the profit he would have made by the completion of the sale.'' 1 Sutherland on Damages, (3rd ed.), sec. 59, p. 187.

''The general measure of damages for breach by the vendor of a contract of sale is compensation, the vendee being entitled to be placed in the same position he would have occupied, had it not been for the breach. This is accomplished in a great majority of cases by allowing a recovery for the breach, of the difference between the contract price and the market price of the property sold, at the time and place of delivery, or at the time of the breach.

''The ground for this rule is that, on failure of the vendor to deliver, the purchaser may go into the market at the time and place

of delivery, and supply himself with the same kind of goods at the market price. And the effect therefore is, not the recovery of profits which the vendee might have made had it not been for the breach, but merely the giving the vendee what he was entitled to under his contract, and the placing him in the position in which he aimed to be placed, so that he can go on in the course originally intended, and make the expected profits or accomplish the expected object." Note to *Guetzkow Brothers Co.* v. *Andrews & Co.*, 52 L. R. A. 209.

In Porto Rico the law itself specifies the loss of profits as a basis for an action to recover damages. Indemnity for losses and damages includes, according to section 1073 of the Civil Code, not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize.

In the case at bar it seems that defendant actually sold during the month of August large quantities of sugar at $6.52, apparently including the lot already sold to plaintiff at $3.22½. It follows that whether the difference in price be regarded as damages or as the proceeds of a resulting trust, the profit thus actually obtained by defendant on the sugar of plaintiff belongs to the latter and not to the former. We are not disposed, therefore, to scrutinize very closely the question of what may or may not constitute the most appropriate technical measure of the damages sustained.

Defendant insists that the damages should be assessed, if at all, upon the basis of the difference between the price in New York on August 4, when the contract was made, and August 6, when defendant attempted to rescind the agreement by giving notice to plaintiff. Conceding for the sake of argument that it was incumbent on plaintiff to seek other contracts with other parties in order to minimize his damages resulting from the breach by defendant, there would be more force in the contention if defendant had shown in mitigation of damages that plaintiff could have obtained the same amount of sugar elsewhere in Mayagüez on August

6 at New York prices, less the usual discount to cover cost of transportation. In the absence of any such showing, we are inclined to accept the figures of plaintiff based on New York prices at the expiration of the period within which defendant had agreed to deliver the sugar, less the customary discount.

We have not overlooked the question raised by defendant at the threshold as to the sufficiency of the complaint, which, we think, states facts sufficient to constitute a cause of action.

The judgment appealed from should be reversed and in lieu thereof judgment should be entered for plaintiff for the amount laid in his complaint, together with interest thereon from and after October 27, 1914, on which date the amended complaint was notified to the defendant, until paid, at the rate of 6 per cent per annum, without special imposition of costs.

*Reversed and substituted.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.

On February 9, 1917, a motion for reconsideration was overruled.